MR. JUSTICE CARRIGAN
delivered the opinion of the Court.
Frontier Airlines, Inc. (Frontier) brought this action seeking relief from a directive of the Department of Revenue. Frontier claims that the directive exceeded the Department’s authority to regulate Frontier under the Colorado Liquor Code. Section 12-47-101, et seq., C.R.S. 1973 (1976 Supp.).[1] The trial court declared the directive invalid and enjoined its enforcement insofar as it applied to alcoholic beverages purchased outside Colorado for sales on Frontier’s airplanes while flying outside Colorado. We affirm.
The parties submitted the case to the trial court on stipulated facts. Frontier is a Nevada corporation with its principal place of business in Denver, Colorado. As part of its services, Frontier sells malt, vinous and spiritous liquors to its passengers during flights; no sales are made on the ground. These sales are authorized by a license granted by the department, pursuant to section 12-47-122, C.R.S. 1973 (1976 Supp.).[2] Denver is the hub of Frontier’s certificated route structure, and Frontier maintains its major service and storage facilities, including a commissary for liquor storage, either in or near Denver.
The parties stipulated that data from 1973 fairly represent Frontier’s current practices with respect to purchase, possession, storage, and sale of liquor. That year, 24% of Frontier’s liquor purchases were from Colorado wholesalers, and therefore were subjected to the Colorado liquor excise tax. Although there is no exact record of the quantity of liquor sold above any specific state, a practical allocation formula devised by Frontier (the accuracy of which is not contested) indicates that 22.1% of Frontier’s 1973 *232 sales were made in the skies over Colorado. Thus Frontier purchases within Colorado and pays Colorado excise taxes on at least as much liquor as it sells in Colorado.
On August 1, 1974, the Department issued the following directive requiring all airlines to purchase from Colorado wholesalers all liquor stored in Colorado:
“It has come to the attention of the Liquor Enforcement Division that Air Line Companies, flying passengers in and out of Colorado, have been using and storing alcoholic beverages purchased from sources other than from Colorado Licensed Wholesalers.
“The Liquor Code of 1935 specifically prohibits this type of activity, in that such airlines that have applied for and received liquor licenses are retailers and must purchase all their alcoholic beverages from Colorado licensed wholesalers.
“It is therefore determined by the State Licensing Authority that upon receipt of this notice all further storing or use of alcoholic beverages from sources other than a Colorado Licensed Wholesaler must cease. All concerned parties shall have until the 1st day of October, 1974 to use or otherwise dispose of such liquors as are herein not allowable.”
Of the liquor Frontier stored in Colorado in 1973, 67% had been purchased in Nevada, where, pursuant to Nevada law, no liquor excise taxes were paid. Because the Liquor Code[3] requires wholesalers to collect the excise tax on all sales, the directive’s effect is to impose the tax on all liquor Frontier stores in Colorado, irrespective of where it is ultimately sold.
The ultimate question is whether the Liquor Code empowers the Department to regulate and tax liquor sales occurring outside the state of Colorado. The relevant provisions of the Code indicate no such grant of authority, express or implied.
Article XXII of the Colorado Constitution authorized the general assembly to enact the Colorado Liquor Code. That article provides, in pertinent part:
“[T]he manufacture, sale and distribution of all intoxicating liquors wholly within the state of Colorado shall ... be performed exclusively by or through such agencies and under such regulations as may hereafter be provided by statutory iaws of the state of Colorado.” (Emphasis added.)
Furthermore, section 12-47-127(1) (a), C.R.S. 1973 (1976 Supp.), authorizes liquor wholesalers to collect the excise tax only upon liquor “sold, offered for sale or used in this state.” Both provisions clearly indicate an intent to limit application of the tax to sales conducted within Colorado, and the Department has cited no authority manifesting a *233 contrary intent. Absent such legislative language, we will presume that the general assembly did not intend the Liquor Code to have extraterritorial effect. See Hanseman v. Hamilton, 176 F.Supp. 371 (D.Colo. 1959); Peerless Insurance Co. v. Clark, 29 Colo. App. 436, 487 P.2d 574 (1971).
Moreover, this presumption is buttressed by facts extraneous to the statutory language. The long-standing operating procedure prior to issuance of the directive, by which Frontier paid Colorado excise taxes on a quantity of liquor slightly greater than its estimated sales over Colorado, was fair to both Frontier and the state. The new procedure mandated by the directive would force Frontier to pay greater excise taxes than contemplated by the statutory language. Moreover, it would subject Frontier to multiple taxation if any other state over which Frontier flies taxes its sales of liquor. Since Denver is the hub of its entire route structure, Frontier must store large supplies of liquor within Colorado to service flights originating in Denver. Thus Frontier does not have the alternative choice of locating its storage facilities in states other than Colorado to avoid or minimize the impact of Colorado’s excise tax.
If we were to uphold the Department’s contention, Frontier, in effect, would be penalized for selecting Colorado as its base for operations. We cannot conclude, absent clear language to that effect, that the general assembly intended the Liquor Code to operate so as to discourage a major airline from basing its operations in Denver and thus bestowing considerable benefits upon the state’s economy.
The challenged directive would establish a new procedure inequitable to Frontier. While that fact alone would not render the directive invalid, it is to be considered in determining whether issuance of the directive was within the intended scope of the Department’s regulatory power under the Liquor Code. We conclude that the legislature did not intend that power to extend to regulation and taxation of liquor sales occurring outside the state.
The trial court’s judgment is affirmed.

The Liquor Code was repealed and re-enacted in 1976. Colo. Sess. Laws 1976, ch. 72. References to the Code in this opinion are to the new section numbers.

“12-47-122. Public transportation system license. A public transportation system license shall be issued by the state licensing authority to every person operating a public transportation system selling any malt, vinous, or spirituous liquors to be served in or upon any dining, club, or parlor car, plane, bus, or other conveyance of such public transportation system.”

Section 12-47-127, C.R.S. 1973 (1976 Supp.).